**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, 80 F Street NW, Washington, DC 20001,<br><br>NATIONAL TREASURY EMPLOYEES UNION, 800 K Street NW, Suite 1000, Washington, DC 20001,<br><br>NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO, 1225 New York Avenue NW, Suite 450, Washington, DC 20005,<br><br>and<br><br>INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, AFL-CIO, 513 C Street NE, Washington, DC 20002,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL MEDIATION AND CONCILIATION SERVICE, 250 E Street SW, Washington, DC 20427,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. ) ) ) ) **COMPLAINT FOR INJUNCTIVE** ) **AND DECLARATORY RELIEF** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      Plaintiffs are labor unions collectively representing hundreds of thousands of federal employees across the federal government. In representing their members and bargaining unit employees, they and/or their affiliates have entered into collective bargaining agreements

("CBAs") with federal agencies. These CBAs include mandatory grievance and arbitration procedures by which they may raise and resolve disputes with their agencies.

2. Many of Plaintiffs' CBAs require them to obtain a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS") to move forward in the arbitration process. FMCS, as part of its statutory command, compiles a roster of arbitrators that unions and employers can use to resolve their disputes.

3. Parties to CBAs may obtain a randomly selected panel of seven arbitrators by requesting one from FMCS. Pursuant to FMCS's own regulations, "a panel request, whether joint or unilateral, will be honored." 29 C.F.R. § 1404.9(b).

4. However, a recent memorandum issued by the FMCS General Counsel has barred unions representing federal-sector workers, including Plaintiffs, from obtaining a panel of arbitrators in certain situations. Pursuant to this memorandum, when a dispute involves a federal agency listed in Executive Order 14251 or Executive Order 14343—orders issued in 2025 that purported to remove certain agencies from the Federal Service Labor-Management Relations Statute—FMCS will not issue an arbitration panel absent affirmative consent from the agency. This impedes Plaintiffs from enforcing the rights of themselves, their affiliates, and their members when seeking to arbitrate disputes with agencies listed in those executive orders.

5. The April Memorandum violates the Administrative Procedure Act on multiple grounds. Agencies are bound by their own regulations, and act arbitrarily and capriciously when they fail to comply with them. Refusing to process a labor union's request for an arbitration panel, even if that request is made unilaterally, violates FMCS regulations and is thus unlawful. Furthermore, in making this policy change, FMCS failed to provide a reasoned explanation for reversing its policy and violating its current regulations. As such, the April Memorandum should

2

be vacated, and FMCS should be required to provide arbitration panels to federal unions in compliance with its current regulations.

### Jurisdiction

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

### Venue

8. The District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e) because Plaintiffs AFGE, NTEU, NFFE, and IFPTE reside here and because a substantial part of the events giving rise to the claim occurred here.

### Parties

9. Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered at 80 F Street NW, Washington, DC 20001. AFGE, the largest union of federal workers, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States and the District of Columbia. AFGE is dedicated to fighting for dignity, safety, and fairness of the job for its members, and promoting efficiency and the improvement of government service so that government can more effectively serve the American people.

10. Plaintiff National Treasury Employees Union ("NTEU") is an unincorporated association with its principal place of business at 800 K Street NW, Suite 1000, Washington, DC 20001. NTEU is the second largest union of federal workers and represents federal employees in thirty-eight departments and agencies. NTEU fights to ensure that public servants are treated with respect and dignity and to secure fair pay and benefits and improved working conditions for federal employees.

11.    Plaintiff National Federation of Federal Employees, IAM, AFL-CIO ("NFFE") is an unincorporated association with its principal place of business in Washington, DC. NFFE, the nation's first federal union, is a national labor union representing approximately 110,000 professional and non-professional federal government workers across the United States.

12.    Plaintiff International Federation of Professional and Technical Engineers, AFL-CIO ("IFPTE") is a labor organization whose local unions serve as the bargaining representatives for federal employees at multiple agencies including the Department of Defense, Environmental Protection Agency, NASA, and the Social Security Administration. IFPTE Locals have represented federal employee bargaining units for more than forty-five years.

13.    Plaintiffs represent their bargaining unit employees and members, by and through their affiliates, through many means, including negotiating collective bargaining agreements, enforcing their rights through the grievance and arbitration process, litigating in federal court, and advocating on their behalf in Congress and before agencies.

14.    Membership in Plaintiffs is voluntary.

15.    Plaintiffs' leadership are democratically elected by and from their respective members.

16.    Plaintiffs' activities are funded by their members through voluntary membership dues.

17.    Plaintiffs bring this action on behalf of themselves and their members, who are harmed by the FMCS's refusal to provide panels of arbitrators that impedes the ability of Plaintiffs and their members to enforce their rights.

18.     Defendant Federal Mediation and Conciliation Service is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), headquartered in Washington, D.C.

## Factual Background

**I.    Plaintiffs Rely on the Federal Mediation and Conciliation Service and Its Roster of Arbitrators to Enforce Their Contractual Rights**

19.     Through the Labor-Management Relations Act of 1947, known as Taft-Hartley, Congress created FMCS as an independent agency. *See* Labor-Management Relations Act, Pub. L. No. 80-101, § 202, 61 Stat. 136, 153 (1947); 29 U.S.C. § 172(a).

20.     Congress has charged FMCS with "maintaining rosters of neutrals and arbitrators, and [adopting] such procedures and rules as are necessary to carry out" that responsibility. 29 U.S.C. § 173(f).

21.     Pursuant to Congress's instruction, FMCS maintains a roster of arbitrators from which parties to collective bargaining agreements may request a randomly selected panel of arbitrators. 29 C.F.R. § 1404.1.

22.     FMCS, by regulation, sets criteria for which arbitrators may be listed on the roster. 29 C.F.R. § 1404.5. FMCS's Arbitrator Review Board, appointed by the FMCS Director, works with the FMCS Office of Arbitration to review the qualifications of applicants, monitor continuing eligibility, hear complaints about arbitrators, and recommend to the Director if an arbitrator should be removed. *Id.* §§ 1404.3–1404.5.

23.     Upon request from a party to a CBA, FMCS will "refer a randomly selected panel of seven arbitrators to parties to an agreement to arbitrate or engage in fact-finding, or where labor arbitration or fact-finding may be provided by statute." *Id.* § 1404.9(b).

24.    FMCS regulations state that such a panel will be provided whether the request is made unilaterally by one party or jointly. *Id.*

25.    FMCS has followed this regulation in practice and has provided panels of arbitrators based on the unilateral request of one party to a CBA, including for some Plaintiffs and/or their affiliates.

26.    Once a panel is received from FMCS, it is used to select an arbitrator to adjudicate contract-based disputes. CBAs often set forth the procedures governing how an arbitrator is selected from the panel. Selection procedures vary and can include the parties alternatively striking arbitrators from the FMCS-provided panel until only one arbitrator remains, ranking their preferences, mutually agreeing on an arbitrator, or one party unilaterally selecting an arbitrator under certain circumstances.

27.    When issuing a panel, FMCS does not take a position on the "status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." Nor does it "decide the merits of a claim by either party that a dispute is not subject to arbitration." 29 C.F.R. §§ 1404.09–10.

28.    In fiscal year 2025, FMCS issued nearly 10,000 panels of arbitrators, and appointed more than 4,000 arbitrators.[1]

29.    Plaintiffs and/or their affiliates represent members and bargaining unit employees in agencies and departments across the federal government, including where they or their affiliates have been certified as the exclusive representative pursuant to 5 U.S.C. § 7111.

---

[1] FMCS, *Fiscal Year 2027 Congressional Budget Submission* app. A (2026), https://www.fmcs.gov/wp-content/uploads/2026/04/2027-Congressional-Budget.pdf.

30.    Plaintiffs and/or their affiliates have entered into CBAs with federal agencies across the federal government.

31.    Plaintiffs and/or their affiliates' federal-sector CBAs include negotiated grievance and arbitration procedures that allow them to resolve disputes with agencies by presenting grievances, processing grievances through the grievance process, and invoking binding arbitration for grievances that are not satisfactorily settled under the negotiated grievance procedure.

32.    Filing grievances and arbitrating disputes pursuant to these procedures allows labor unions to enforce their rights as well as the rights of their members and bargaining unit employees, thereby providing an important means for Plaintiffs to represent their members and bargaining unit employees.

33.    Many of these CBAs include, as part of the arbitration process, a requirement to obtain a panel of arbitrators from the FMCS roster.

34.    The federal government, through its agencies that are parties to the agreements, agreed to these federal-sector contracts requiring the selection of an arbitrator from the FMCS roster.

35.    On March 27, 2025, President Trump issued Executive Order 14251, entitled *Exclusions from Federal Labor-Management Relations Programs*. 90 Fed. Reg. 14553. In it, he declared that pursuant to his authority under 5 U.S.C. § 7103(b)(1), agencies including the Department of Veterans Affairs; the Department of the Treasury, except the Bureau of Engraving and Printing; and the Department of Defense were no longer subject to the Federal Service Labor-Management Relations Statute ("FSLMRS").

36.    On August 28, 2025, President Trump issued Executive Order 14343, entitled *Further Exclusions from the Federal Labor-Management Relations Program*. 90 Fed. Reg. 42683.

In it, he declared that pursuant to his authority under 5 U.S.C. § 7103(b)(1), additional agencies, including the United States Agency for Global Media, NASA, and certain subdivisions of the Department of Commerce and National Oceanic and Atmospheric Administration were no longer subject to the FSLMRS.

37. Neither Executive Order 14251 nor Executive Order 14343 (collectively, the "Exclusion Orders") mentioned FMCS.

38. Plaintiffs and/or their affiliates represent employees at federal agencies which have been purportedly excluded from the FSLMRS by the Exclusion Orders and have entered into CBAs with such agencies. They and/or their affiliates have challenged these Exclusion Orders, agencies' implementations thereof, and/or agency terminations of collective bargaining agreements in federal court. These lawsuits remain ongoing.

39. Plaintiffs have received preliminary relief in several of these lawsuits. Some injunctions have been stayed, while others remain in effect. For example, the government is currently enjoined from enforcing Executive Order 14251 against Plaintiff IFPTE's affiliates at the Department of Defense and Environmental Protection Agency, and it is currently enjoined from enforcing Executive Order 14343 against Plaintiff AFGE's affiliate at the United States Agency for Global Media. An affiliate of Plaintiff AFGE has also obtained an injunction that reinstated its collective bargaining agreement with the Department of Veterans Affairs.

40. In the aftermath of the Exclusion Orders, Plaintiffs have continued to seek to enforce the contractual rights of themselves, their affiliates, and their bargaining unit employees. At times, this has included using the grievance and arbitration process contained in their CBAs with federal agencies.

41.     In some arbitrations which have taken place after the Exclusion Orders, arbitrators have determined that they retained jurisdiction over the disputes and have issued decisions in unions' favor, even when the agency has refused to participate in the arbitration.

## II.     FMCS Issues a Memorandum Changing Their Policy on Providing Arbitration Panels, Harming Plaintiffs

42.     On April 22, 2026, more than a year after Executive Order 14251's issuance, FMCS's General Counsel issued a memorandum to its Arbitration Department entitled "Aligning Federal Mediation and Conciliation's Arbitration Services with Executive Orders 14251 and 14343." (Exhibit 1) ("April Memorandum").[2]

43.     The April Memorandum stated that "FMCS will affirm consent from federal agencies appearing in the EOs before issuing an arbitration panel." Ex. 1 at 1.

44.     It then claimed that "[b]ecause FMCS cannot provide an arbitration panel in the absence of the parties' mutual consent, if the federal agency does not consent to the arbitration panel, FMCS will hold the request for an arbitration panel in abeyance until further notice." *Id.*

45.     The April Memorandum admitted that it formally changed FMCS policy governing when parties may receive arbitration panels: "For the agencies affected by the EOs, this guidance document changes FMCS policy to ensure both parties mutually consent to arbitration before assigning an arbitration panel." *Id.*

46.     The April Memorandum sought to justify this change in practice by reference to its own regulations but was silent on the actual regulatory provision that governs the provision of arbitration panels. The Memorandum twice emphasized that 29 C.F.R. § 1404.9(c) states that "FMCS has no power to [c]ompel parties to appear before an arbitrator [nor] compel parties to

---

[2] The April Memorandum is available on the FMCS website at https://www.fmcs.gov/wp-content/uploads/2026/04/4-22-2026-Arbitration-Memo-Final.pdf.

arbitrate any issue." *Id.* at 2 (alterations in original). However, at no point did it cite, much less explain how the FMCS's new policy complies with 29 C.F.R. § 1404.9(b), which states that "[a] panel request, *whether joint or unilateral*, will be honored." (emphasis added).

47.     Indeed, Section 1404.9(b) goes on to further cast doubt on the April Memorandum's purported justification. It clarifies that "[n]either issuance of a panel nor appointment of an arbitrator signifies the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." *Id.*

48.     Likewise, the April Memorandum fails to explain how its new policy complies with 29 C.F.R. § 1404.10 and its limitation that FMCS's Office of Arbitration "will not decide the merits of a claim by either party that a dispute is not subject to arbitration."

49.     Furthermore, 29 C.F.R. § 1404.12 sets forth a process by which an arbitrator may be selected from a panel even if one party chooses not to participate. Section 1404.12(b) sets forth a default rule when CBAs allow the parties to separately rank their preferences regarding the arbitrators on the panel or are silent on how to select arbitrators. Under this procedure, if one party does not submit its rank order in fourteen days after the other party submits theirs, "the first party's choice will be honored."

50.     The April Memorandum has harmed and will continue to harm Plaintiffs and/or their affiliates by impeding their ability to proceed through contractual arbitration processes to enforce their rights and the rights of their members.

51.     Invoking the April Memorandum, for example, FMCS has informed an AFGE affiliate that it would not provide a panel of arbitrators at the affiliate's request but would instead "hold this case in abeyance until further notice" because the Department of Veterans Affairs stated that it did not consent to arbitration.

52.     Before the April Memorandum was issued, Plaintiffs were able to obtain arbitration panels by filing a unilateral request; that pathway is now closed for cases involving agencies listed in the Exclusion Orders.

53.     It is substantially likely that Plaintiffs' future attempts to obtain arbitration panels from FMCS for cases involving agencies listed in the Exclusion Orders will be unsuccessful due to the April Memorandum.

54.     The April Memorandum therefore blocks Plaintiffs and/or their affiliates from receiving FMCS panel lists, a prerequisite step required in many CBAs to ultimately take a grievance to arbitration, when seeking to arbitrate disputes against agencies listed in the Exclusion Orders.

55.     For Plaintiffs and/or their affiliates with agreed-upon CBA language that permits the unilateral appointment of an arbitrator from an FMCS panel when one party fails to participate in the selection process, the April Memorandum prevents Plaintiffs and/or their affiliates from not only obtaining an FMCS panel, but also exercising their contractual right to select an arbitrator.

56.     FMCS's April Memorandum has thus short-circuited Plaintiffs' contractual rights, freezing the arbitration process and preventing Plaintiffs from raising issues to arbitration by blocking them from obtaining an arbitrator to which they could contend that the arbitrator has jurisdiction over the dispute at issue.

57.     This leaves Plaintiffs who represent workers at agencies covered by the Exclusion Orders unable to enforce their contractual rights through the grievance and arbitration process in instances where their CBAs require obtaining panels from FMCS, impeding them from achieving a core part of their mission.

11

## Count I

*Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)*

58.    Plaintiffs reallege and incorporate Paragraphs 1 through 57.

59.    The Administrative Procedure Act provides a cause of action for parties adversely affected or aggrieved by agency action to obtain judicial review. 5 U.S.C. §§ 702–704.

60.    The April Memorandum is "final agency action" within the meaning of 5 U.S.C. § 704 because it marks the consummation of the agency's decision-making process on how to process arbitration requests from unions representing employees at agencies included in the Exclusion Orders and thus determined Plaintiffs' rights and caused legal consequences.

61.    Under the APA, courts are empowered to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

62.    Agencies are obliged by the APA to comply with their own regulations. "Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Alon Refining Krotz Springs, Inc. v. EPA*, 172 F.4th 12, 17 (D.C. Cir. 2026) (citation omitted).

63.    The April Memorandum, by impeding Plaintiffs' ability to obtain panels of arbitrators for cases involving agencies included in Exclusion Orders, violates FMCS's own regulations, which mandate that "a panel request, *whether joint or unilateral*, will be honored." 29 C.F.R. § 1404.9(b) (emphasis added).

64.    The April Memorandum, by allowing an agency's claim that they do not consent to an arbitration to impede the arbitration process, also violates 29 C.F.R. § 1414.10, which provides that FMCS "will not decide the merits of a claim by either party that a dispute is not subject to arbitration."

12

65.    The APA also requires agencies to provide a reasoned explanation for their decisions. When agencies depart from past practice, this reasoned explanation requires both acknowledging the change in policy and explaining why the agency has changed its position. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 28–29 (2020).

66.    FMCS, by not citing to or explaining in its April Memorandum why its past determination that parties may unilaterally obtain arbitration panels is incorrect, has failed to provide a sufficient reasoned explanation for its change in policy.

67.    Furthermore, FMCS, by claiming that this decision is justified by its inability to compel parties to arbitrate, acted arbitrarily and capriciously because its own regulations recognize that "[n]either issuance of a panel nor appointment of an arbitrator signifies the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." 29 C.F.R. § 1404.9.

68.    The April Memorandum is therefore unlawful and should be set aside. FMCS should be required to comply with its regulations and provide arbitration panels to federal labor organizations who request them as part of their contractual grievance and arbitration procedures.

## Relief Requested

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

A.  Declaring that the April Memorandum violates § 706(2)(A) of the Administrative Procedure Act;

B.  Vacating the April Memorandum and its requirement that FMCS not timely issue arbitration panel requests to unions who request them to resolve disputes with agencies covered by Exclusion Orders;

13

C.  Requiring Defendants to abide by 29 C.F.R. §§ 1404.9 and 1404.10 and provide

arbitration panel requests to federal unions who request them unilaterally;

D.  Granting Plaintiffs' attorney's fees and costs; and

E.  Granting such other relief as this Court may deem just and proper.

Dated: May 15, 2026                              Respectfully submitted,

                                                 /s/ Leon Dayan
                                                 Leon Dayan (DC Bar No. 444144)
                                                 J. Alexander Rowell (DC Bar No. 1780007)
                                                 BREDHOFF & KAISER, P.L.L.C.
                                                 805 Fifteenth Street NW, Suite 1000
                                                 Washington, DC 20005
                                                 (202) 842-2600
                                                 (202) 842-1888 (fax)
                                                 ldayan@bredhoff.com
                                                 arowell@bredhoff.com

                                                 Counsel for Plaintiffs

                                                 Rushab B. Sanghvi (DC Bar No. 1012814)
                                                 Andres M. Grajales (DC Bar No. 476894)
                                                 AMERICAN FEDERATION OF GOVERNMENT
                                                 EMPLOYEES, AFL-CIO
                                                 80 F Street NW
                                                 Washington, DC 20001
                                                 Tel: (202) 639-6426
                                                 SanghR@afge.org
                                                 Grajaa@afge.org

                                                 Counsel for Plaintiff AFGE

                                                 Paras N. Shah (DC Bar No. 983881)
                                                 General Counsel
                                                 Allison C. Giles (DC Bar No. 439705)
                                                 Associate General Counsel
                                                 NATIONAL TREASURY EMPLOYEES UNION
                                                 800 K Street NW, Suite 1000
                                                 Washington, DC 20001
                                                 (202) 572-5500
                                                 paras.shah@nteu.org

14

allie.giles@nteu.org

*Counsel for Plaintiff NTEU*

Yvette M. Piacsek (DC Bar No. 980302)
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Avenue NW, Suite 450
Washington, DC 20005
Tel: (202) 216-4428
ypiacsek@nffe.org

*Counsel for Plaintiff NFFE*

Maria Teresa Ellis (DC Bar No. 495855)
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL & TECHNICAL ENGINEERS,
AFL-CIO
513 C Street NE
Washington, DC 20002
(202) 239-4880
tellis@ifpte.org

*Counsel for Plaintiff IFPTE*

15