**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,
80 F Street NW,
Washington, DC 20001,

NATIONAL TREASURY EMPLOYEES UNION,
800 K Street NW, Suite 1000,
Washington, DC 20001,

NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO,
1225 New York Avenue NW, Suite 450,
Washington, DC 20005,

and

INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, AFL-CIO,
513 C Street NE,
Washington, DC 20002,

Plaintiffs,

v.

FEDERAL MEDIATION AND CONCILIATION SERVICE,
250 E Street SW,
Washington, DC 20427,

Defendant.

Case No. 26-1676 (RDM)

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. Plaintiffs are labor unions collectively representing hundreds of thousands of federal employees across the federal government. In representing their members and bargaining unit employees, they and/or their affiliates have entered into collective bargaining agreements

("CBAs") with federal agencies. These CBAs include mandatory grievance and arbitration procedures by which they may raise and resolve disputes with their agencies.

2. Many of Plaintiffs' CBAs require them to obtain a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS") to move forward in the arbitration process. FMCS, as part of its statutory command, compiles a roster of arbitrators that unions and employers can use to resolve their disputes.

3. Parties to CBAs may obtain a randomly selected panel of seven arbitrators by requesting one from FMCS. Pursuant to FMCS's longstanding regulations that were in effect in April 2026, "a panel request, whether joint or unilateral, will be honored." 29 C.F.R. § 1404.9(b).

4. However, a memorandum issued by the FMCS General Counsel on April 22, 2026 barred unions representing federal-sector workers, including Plaintiffs, from obtaining a panel of arbitrators in certain situations. Pursuant to this memorandum, when a dispute involves a federal agency listed in Executive Order 14251 or Executive Order 14343—orders issued in 2025 that purported to remove certain agencies from the Federal Service Labor-Management Relations Statute—FMCS will not issue an arbitration panel absent affirmative consent from the agency. This impedes Plaintiffs from enforcing the rights of themselves, their affiliates, and their members when seeking to arbitrate disputes with agencies listed in those executive orders.

5. The April Memorandum violates the Administrative Procedure Act on multiple grounds. Agencies are bound by their own regulations, and act arbitrarily and capriciously when they fail to comply with them. Refusing to process a labor union's request for an arbitration panel, even if that request is made unilaterally, violates the FMCS regulations in effect at the time the Memorandum was issued and is thus unlawful. Furthermore, in making this policy change, FMCS

failed to provide a reasoned explanation for reversing its policy and violating its current regulations.

6. After this lawsuit was originally filed, FMCS took further action. On the day its original Answer was due, FMCS submitted an Interim Final Rule that reversed its long-standing regulatory position that unilateral requests for panels would be processed (the "IFR"). While FMCS repeatedly frames this reversal as a clarification, it does not grapple with the fact that it has provided unilateral requests for panels for decades nor explain whether its past view that this was permissible was incorrect and, if so, why it was incorrect.

7. Unlike the last three times where FMCS has amended Part 1404, FMCS also failed to provide interested parties an opportunity for pre-enactment notice and comment. The Interim Final Rule was officially published in the Federal Register on August 4, 2026 and took effect that day without notice or comment. FMCS invoked the narrow "good cause" exception to the notice-and-comment requirement, doing so based only on a conclusory claim that it needed to "clarify promptly" its new policy against providing panels upon unilateral request.

8. The IFR should thus be vacated on two separate and independent grounds: it was improperly issued without providing opportunity for notice and comment, and it is arbitrary and capricious. Because vacatur of the IFR would restore the pre-IFR regulations, the April Memorandum, which plainly contradicts those regulations, should be vacated as well, and FMCS should be required to provide arbitration panels to federal unions in compliance with its the long-standing, valid pre-IFR regulations.

## Jurisdiction

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

10. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

**Venue**

11. The District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e) because Plaintiffs AFGE, NTEU, NFFE, and IFPTE reside here and because a substantial part of the events giving rise to the claim occurred here.

**Parties**

12. Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered at 80 F Street NW, Washington, DC 20001. AFGE, the largest union of federal workers, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States and the District of Columbia. AFGE is dedicated to fighting for dignity, safety, and fairness of the job for its members, and promoting efficiency and the improvement of government service so that government can more effectively serve the American people.

13. Plaintiff National Treasury Employees Union ("NTEU") is an unincorporated association with its principal place of business at 800 K Street NW, Suite 1000, Washington, DC 20001. NTEU is the second largest union of federal workers and represents federal employees in thirty-eight departments and agencies. NTEU fights to ensure that public servants are treated with respect and dignity and to secure fair pay and benefits and improved working conditions for federal employees.

14. Plaintiff National Federation of Federal Employees, IAM, AFL-CIO ("NFFE") is an unincorporated association with its principal place of business in Washington, DC. NFFE, the nation's first federal union, is a national labor union representing approximately 110,000 professional and non-professional federal government workers across the United States.

15. Plaintiff International Federation of Professional and Technical Engineers, AFL-CIO ("IFPTE") is a labor organization whose local unions serve as the bargaining representatives for federal employees at multiple agencies including the Department of Defense, Environmental Protection Agency, NASA, and the Social Security Administration. IFPTE Locals have represented federal employee bargaining units for more than forty-five years.

16. Plaintiffs represent their bargaining unit employees and members, by and through their affiliates, through many means, including negotiating collective bargaining agreements, enforcing their rights through the grievance and arbitration process, litigating in federal court, and advocating on their behalf in Congress and before agencies.

17. Membership in Plaintiffs is voluntary.

18. Plaintiffs' leadership are democratically elected by and from their respective members.

19. Plaintiffs' activities are funded by their members through voluntary membership dues.

20. Plaintiffs bring this action on behalf of themselves and their members, who are harmed by the FMCS's refusal to provide panels of arbitrators that impedes the ability of Plaintiffs and their members to enforce their rights.

21. Defendant Federal Mediation and Conciliation Service is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), headquartered in Washington, D.C.

## Factual Background

### I. Plaintiffs Rely on the Federal Mediation and Conciliation Service and Its Roster of Arbitrators to Enforce Their Contractual Rights

22. Through the Labor-Management Relations Act of 1947, known as Taft-Hartley, Congress created FMCS as an independent agency. *See* Labor-Management Relations Act, Pub. L. No. 80-101, § 202, 61 Stat. 136, 153 (1947); 29 U.S.C. § 172(a).

23. Congress has charged FMCS with "maintaining rosters of neutrals and arbitrators, and [adopting] such procedures and rules as are necessary to carry out" that responsibility. 29 U.S.C. § 173(f).

24. Pursuant to Congress's instruction, FMCS maintains a roster of arbitrators from which parties to collective bargaining agreements may request a randomly selected panel of arbitrators. 29 C.F.R. § 1404.1.

25. FMCS, by regulation, sets criteria for which arbitrators may be listed on the roster. 29 C.F.R. § 1404.5. FMCS's Arbitrator Review Board, appointed by the FMCS Director, works with the FMCS Office of Arbitration to review the qualifications of applicants, monitor continuing eligibility, hear complaints about arbitrators, and recommend to the Director if an arbitrator should be removed. *Id.* §§ 1404.3–1404.5.

26. Upon request from a party to a CBA, FMCS will "refer a randomly selected panel of seven arbitrators to parties to an agreement to arbitrate or engage in fact-finding, or where labor arbitration or fact-finding may be provided by statute." *Id.* § 1404.9(b).

27. For decades, FMCS regulations have stated that such a panel will be provided whether the request is made unilaterally by one party or jointly. *Id.*

28. For example, the regulation governing FMCS's arbitration services which took effect April 15, 1979 stated that "[t]he Service will refer a panel of arbitrators to the parties upon

request" and "[i]n the event that the request is made by only one party, the Service will submit a panel; however, any submission of a panel should not be construed as anything more than compliance with a request and does not necessarily reflect the contractu[]al requirements of the parties." 44 Fed. Reg. 13008, 13009 (March 9, 1979). (revising 29 C.F.R. § 1404.10).

29. This position continued in subsequent regulatory amendments. The regulation which took effect October 1, 1997 stated that "[i]n the event, however, that the request is made by only one party, the OAS will submit a panel of arbitrators. However, the issuance of a panel—pursuant to either a joint or unilateral request—is nothing more than a response to a request. It does not signify the adoption of any position by the FMCS regarding the arbitrability of any dispute or the terms of the parties' contract" 62 Fed Reg. 34170, 34173 (June 25, 1997) (revising 29 C.F.R. § 1404.09).

30. Similar language was included in the last change to the FMCS's arbitration services regulations, which took effect on May 20, 2019. That regulation stated "[h]owever, a panel request, whether joint or unilateral, will be honored. . . . The issuance of a panel—in response to either joint or unilateral request—is nothing more than a response to a request. Neither issuance of a panel nor appointment of an arbitrator signifies the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." 84 Fed. Reg. 16205, 16208 (April 18, 2019) (revising 29 C.F.R. § 1404.09).

31. FMCS has followed its longstanding regulations in practice and has provided panels of arbitrators based on the unilateral request of one party to a CBA, including for some Plaintiffs and/or their affiliates.

32. Once a panel is received from FMCS, it is used to select an arbitrator to adjudicate contract-based disputes. CBAs often set forth the procedures governing how an arbitrator is

selected from the panel. Selection procedures vary and can include the parties alternatively striking arbitrators from the FMCS-provided panel until only one arbitrator remains, ranking their preferences, mutually agreeing on an arbitrator, or one party unilaterally selecting an arbitrator under certain circumstances.

33. According to the regulation in effect when the April Memorandum was issued, when issuing a panel, FMCS does not take a position on the "status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." Nor does it "decide the merits of a claim by either party that a dispute is not subject to arbitration." 29 C.F.R. §§ 1404.09–10.

34. In fiscal year 2025, FMCS issued nearly 10,000 panels of arbitrators, and appointed more than 4,000 arbitrators.[1]

35. Plaintiffs and/or their affiliates represent members and bargaining unit employees in agencies and departments across the federal government, including where they or their affiliates have been certified as the exclusive representative pursuant to 5 U.S.C. § 7111.

36. Plaintiffs and/or their affiliates have entered into CBAs with federal agencies across the federal government.

37. Plaintiffs and/or their affiliates' federal-sector CBAs include negotiated grievance and arbitration procedures that allow them to resolve disputes with agencies by presenting grievances, processing grievances through the grievance process, and invoking binding arbitration for grievances that are not satisfactorily settled under the negotiated grievance procedure.

38. Filing grievances and arbitrating disputes pursuant to these procedures allows labor unions to enforce their rights as well as the rights of their members and bargaining unit employees,

---

[1] FMCS, *Fiscal Year 2027 Congressional Budget Submission* app. A (2026), https://www.fmcs.gov/wp-content/uploads/2026/04/2027-Congressional-Budget.pdf.

thereby providing an important means for Plaintiffs to represent their members and bargaining unit employees.

39. Many of these CBAs include, as part of the arbitration process, a requirement to obtain a panel of arbitrators from the FMCS roster.

40. The federal government, through its agencies that are parties to the agreements, agreed to these federal-sector contracts requiring the selection of an arbitrator from the FMCS roster.

41. On March 27, 2025, President Trump issued Executive Order 14251, entitled *Exclusions from Federal Labor-Management Relations Programs*. 90 Fed. Reg. 14553. In it, he declared that pursuant to his authority under 5 U.S.C. § 7103(b)(1), agencies including the Department of Veterans Affairs; the Department of the Treasury, except the Bureau of Engraving and Printing; and the Department of Defense were no longer subject to the Federal Service Labor-Management Relations Statute ("FSLMRS").

42. On August 28, 2025, President Trump issued Executive Order 14343, entitled *Further Exclusions from the Federal Labor-Management Relations Program*. 90 Fed. Reg. 42683. In it, he declared that pursuant to his authority under 5 U.S.C. § 7103(b)(1), additional agencies, including the United States Agency for Global Media, NASA, and certain subdivisions of the Department of Commerce and National Oceanic and Atmospheric Administration were no longer subject to the FSLMRS.

43. Neither Executive Order 14251 nor Executive Order 14343 (collectively, the "Exclusion Orders") mentioned FMCS.

44. Plaintiffs and/or their affiliates represent employees at federal agencies which have been purportedly excluded from the FSLMRS by the Exclusion Orders and have entered into

CBAs with such agencies. They and/or their affiliates have challenged these Exclusion Orders, agencies' implementations thereof, and/or agency terminations of collective bargaining agreements in federal court. These lawsuits remain ongoing.

45. Plaintiffs have received preliminary relief in several of these lawsuits. Some injunctions have been stayed, while others remain in effect. For example, the government is currently enjoined from enforcing Executive Order 14251 against Plaintiff IFPTE's affiliates at the Department of Defense and Environmental Protection Agency, and it is currently enjoined from enforcing Executive Order 14343 against Plaintiff AFGE's affiliate at the United States Agency for Global Media. An affiliate of Plaintiff AFGE has also obtained an injunction that reinstated its collective bargaining agreement with the Department of Veterans Affairs.

46. In the aftermath of the Exclusion Orders, Plaintiffs have continued to seek to enforce the contractual rights of themselves, their affiliates, and their bargaining unit employees. At times, this has included using the grievance and arbitration process contained in their CBAs with federal agencies.

47. In some arbitrations which have taken place after the Exclusion Orders, arbitrators have determined that they retained jurisdiction over the disputes and have issued decisions in unions' favor, even when the agency has refused to participate in the arbitration.

## II. FMCS Issues a Memorandum Changing Their Policy on Providing Arbitration Panels, Harming Plaintiffs

48. On April 22, 2026, more than a year after Executive Order 14251's issuance, FMCS's General Counsel issued a memorandum to its Arbitration Department entitled "Aligning

Federal Mediation and Conciliation's Arbitration Services with Executive Orders 14251 and 14343." (Exhibit 1) ("April Memorandum").[2]

49. The April Memorandum stated that "FMCS will affirm consent from federal agencies appearing in the EOs before issuing an arbitration panel." Ex. 1 at 1.

50. It then claimed that "[b]ecause FMCS cannot provide an arbitration panel in the absence of the parties' mutual consent, if the federal agency does not consent to the arbitration panel, FMCS will hold the request for an arbitration panel in abeyance until further notice." *Id.*

51. The April Memorandum admitted that it formally changed FMCS policy governing when parties may receive arbitration panels: "For the agencies affected by the EOs, this guidance document changes FMCS policy to ensure both parties mutually consent to arbitration before assigning an arbitration panel." *Id.*

52. The April Memorandum sought to justify this change in practice by reference to its own regulations but was silent on the actual regulatory provision that governs the provision of arbitration panels. The Memorandum twice emphasized that 29 C.F.R. § 1404.9(c) states that "FMCS has no power to [c]ompel parties to appear before an arbitrator [nor] compel parties to arbitrate any issue." *Id.* at 2 (alterations in original). However, at no point did it cite, much less explain how the FMCS's new policy complies with the version of 29 C.F.R. § 1404.9(b) in effect at the time of issuance, which stated that "[a] panel request, *whether joint or unilateral*, will be honored." (emphasis added).

53. Indeed, the then-current Section 1404.9(b) went on to further cast doubt on the April Memorandum's purported justification. It clarified that "[n]either issuance of a panel nor

[2] The April Memorandum is available on the FMCS website at https://www.fmcs.gov/wp-content/uploads/2026/04/4-22-2026-Arbitration-Memo-Final.pdf.

appointment of an arbitrator signifies the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." *Id.*

54. Likewise, the April Memorandum fails to explain how its new policy complies with 29 C.F.R. § 1404.10 and its limitation—contained in both the pre-IFR regulation and the IFR—that FMCS's Office of Arbitration "will not decide the merits of a claim by either party that a dispute is not subject to arbitration."

55. Furthermore, 29 C.F.R. § 1404.12 sets forth a process by which an arbitrator may be selected from a panel even if one party chooses not to participate. Section 1404.12(b) sets forth a default rule when CBAs allow the parties to separately rank their preferences regarding the arbitrators on the panel or are silent on how to select arbitrators. Under this procedure, if one party does not submit its rank order in fourteen days after the other party submits theirs, "the first party's choice will be honored."

**III. After This Suit Was Filed, FMCS Issues an Interim Final Rule Undoing Its Longstanding Regulatory Provision on Honoring Unilateral Panel Requests Provision on Providing Arbitration Panels, Harming Plaintiffs**

56. On May 15, 2026, Plaintiffs filed their initial Complaint challenging the April Memorandum as arbitrary and capricious in violation of the APA. Dkt. No. 1.

57. On July 31, 2026—the day Defendant filed its Answer in this matter, Dkt. No. 14—FMCS submitted an Interim Final Rule that amended its regulations governing its provision of arbitration services.

58. This Interim Final Rule, *Requests for Arbitration Panels*, was officially published in the Federal Register on August 4, 2026 and took effect that same day. 91 Fed. Reg. 49273 (August 4, 2026) ("the IFR") (Exhibit 2).

59. In the IFR, FMCS contended that it issued the rule to "clarify its arbitration services regulations and prevent misinterpretation of current § 1404.9(b)."

60. FMCS does not explain in the IFR how the then-current § 1404.9(b), which plainly stated that a panel request "whether joint or unilateral, will be honored" somehow needed clarification or how it was subject to misinterpretation. Instead, it replaces this guarantee with the statement that requests "may be joint or unilateral unless this part, applicable law, or the parties' agreement requires joint authorization for the requested service."

61. FMCS, through the IFR, also replaces its shall-issue regime for typical seven-arbitrator panels with a new purportedly "limited" threshold inquiry where FMCS "may request from the parties the agreement, statutory provision, regulation, court order, written authorization, or other information necessary to determine whether OA may provide the requested service." 29 C.F.R. § 1404.9(b)(3).

62. FMCS does so while claiming that it is merely "clarif[ying] the limited screening role FMCS may perform before issuing a panel," even though such unilateral requests have not previously been screened in this fashion and that the pre-IFR regulation made clear that issuing a panel does not "signif[y] the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract."

63. Under the IFR, FMCS may now weigh in at the initial panel request stage and deny or hold in abeyance unilateral requests for arbitrator panels.

64. The IFR also amends FMCS's regulatory provision which provided that the FMCS "will not decide the merits of a claim by either party that a dispute is not subject to arbitration" by appending that the FMCS "may, however, conduct a limited threshold inquiry to determine whether FMCS may lawfully submit a panel, make a direct appointment, or provide related arbitration services under this part, consistent with § 1404.9." 29 C.F.R. § 1404.10.

65. Likewise, the IFR amends FMCS's regulatory provision at 29 C.F.R. § 1404.12 which provided that if one party fails to respond as part of the ranked preferences process to select an arbitrator, "the first party's choice will be honored" by appending that this "is subject to § 1404.9(b) and does not require [FMCS] to make an appointment where [FMCS] determines that the appointment would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority."

66. The IFR allows FMCS to make determinations with respect to the arbitrability of disputes for which a panel of arbitrators is sought.

67. FMCS did not provide interested parties notice and an opportunity to comment on the IFR before it took effect, instead claiming that it had "good cause under 5 U.S.C. [§] 553(b)(B)" to issue the rule absent notice-and-comment because "prior notice and public procedure are impracticable, unnecessary, and contrary to the public interest."

68. Had Plaintiffs been given notice and an opportunity to comment on the new regulations before they took effect, they would have done so and opposed the changes.

69. Plaintiffs intend to file comments on the IFR on or before the September 3, 2026 deadline.

## IV. The April Memorandum and IFR, By Halting the Issuance of Unilateral Panel Requests, Are Harming Plaintiffs

70. The April Memorandum and IFR have harmed and will continue to harm Plaintiffs and/or their affiliates by impeding their ability to proceed through contractual arbitration processes to enforce their rights and the rights of their members, including the right to have questions of arbitrability resolved through the collective bargaining process.

71. Invoking the April Memorandum, for example, FMCS has informed an AFGE affiliate that it would not provide a panel of arbitrators at the affiliate's request but would instead

"hold this case in abeyance until further notice" because the Department of Veterans Affairs stated that it did not consent to arbitration.

72. Before the April Memorandum was issued, Plaintiffs were able to obtain arbitration panels by filing a unilateral request; that pathway is now closed for cases involving agencies listed in the Exclusion Orders.

73. It is substantially likely that Plaintiffs' future attempts to obtain arbitration panels from FMCS for cases involving agencies listed in the Exclusion Orders will be unsuccessful due to the April Memorandum.

74. This harm is made even clearer by the IFR, which replaces longstanding language confirming that unilateral panel requests will be honored with a new inquiry that injects the FMCS into disputes over arbitrability and states that FMCS may decline to provide panels or hold requests in abeyance.

75. The April Memorandum and the IFR therefore block Plaintiffs and/or their affiliates from receiving FMCS panel lists, a prerequisite step required in many CBAs to ultimately take a grievance to arbitration, when seeking to arbitrate disputes against agencies listed in the Exclusion Orders.

76. For Plaintiffs and/or their affiliates with agreed-upon CBA language that permits the unilateral appointment of an arbitrator from an FMCS panel when one party fails to participate in the selection process, the April Memorandum prevents Plaintiffs and/or their affiliates from not only obtaining an FMCS panel, but also exercising their contractual right to select an arbitrator.

77. FMCS's April Memorandum and IFR have thus short-circuited Plaintiffs' contractual rights, freezing the arbitration process and preventing Plaintiffs from raising issues to

arbitration by blocking them from obtaining an arbitrator to which they could contend that the arbitrator has jurisdiction over the dispute at issue.

78. This leaves Plaintiffs who represent workers at agencies covered by the Exclusion Orders unable to enforce their contractual rights through the grievance and arbitration process in instances where their CBAs require obtaining panels from FMCS, impeding them from achieving a core part of their mission.

**Count I**

*April Memorandum - Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)*

79. Plaintiffs reallege and incorporate Paragraphs 1 through 78.

80. The Administrative Procedure Act provides a cause of action for parties adversely affected or aggrieved by agency action to obtain judicial review. 5 U.S.C. §§ 702–704.

81. The April Memorandum is "final agency action" within the meaning of 5 U.S.C. § 704 because it marks the consummation of the agency's decision-making process on how to process arbitration requests from unions representing employees at agencies included in the Exclusion Orders and thus determined Plaintiffs' rights and caused legal consequences.

82. Under the APA, courts are empowered to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

83. Agencies are obliged by the APA to comply with their own regulations. "Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Alon Refining Krotz Springs, Inc. v. EPA*, 172 F.4th 12, 17 (D.C. Cir. 2026) (citation omitted).

84. The April Memorandum, by impeding Plaintiffs' ability to obtain panels of arbitrators for cases involving agencies included in Exclusion Orders, violated FMCS's own

regulations in effect at the time, which mandated that "a panel request, *whether joint or unilateral*, will be honored." 29 C.F.R. § 1404.9(b) (emphasis added).

85. The April Memorandum, by allowing an agency's claim that they do not consent to an arbitration to impede the arbitration process, also violates 29 C.F.R. § 1414.10, which provides that FMCS "will not decide the merits of a claim by either party that a dispute is not subject to arbitration."

86. The APA also requires agencies to provide a reasoned explanation for their decisions. When agencies depart from past practice, this reasoned explanation requires both acknowledging the change in policy and explaining why the agency has changed its position. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 28–29 (2020).

87. FMCS, by not citing to or explaining in its April Memorandum why its past determination that parties may unilaterally obtain arbitration panels is incorrect, has failed to provide a sufficient reasoned explanation for its change in policy.

88. Furthermore, FMCS, by claiming that this decision is justified by its inability to compel parties to arbitrate, acted arbitrarily and capriciously because its own regulations in effect at the time recognized that "[n]either issuance of a panel nor appointment of an arbitrator signifies the adoption of any position by FMCS regarding the status of an arbitration agreement, arbitrability of any dispute, or the terms of the parties' contract." 29 C.F.R. § 1404.9.

89. Any reliance on FMCS's new IFR, which postdates the Memorandum by months, should be rejected as an inappropriate post-hoc justification. Regardless, as described in Counts II and III, this IFR is itself unlawful and should be set aside, restoring the regulations in effect at the time the April Memorandum was issued.

90. The April Memorandum is therefore unlawful and should be set aside. FMCS should be required to comply with its longstanding regulations and provide arbitration panels to federal labor organizations who request them as part of their contractual grievance and arbitration procedures.

**Count II**

*IFR - Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(D)*

91. Plaintiffs reallege and incorporate Paragraphs 1 through 90.

92. The IFR, which took effect on August 4, 2026, is a final agency action within the meaning of 5 U.S.C. § 704.

93. The Administrative Procedure Act requires agencies to publish "notice of proposed rule making" in the Federal Register and to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b), (c).

94. These notice-and-comment requirements extend not only to the promulgation of new rules, but also to rescinding or amending rules. 5 U.S.C. § 551(5).

95. By publishing the IFR in the Federal Register with an immediate effective date, FMCS failed to give interested parties the opportunity to comment on its changes to its arbitration service regulations before those changes took effect.

96. If the change implemented by FMCS's IFR had been the subject of advance publication and notice-and-comment rulemaking, Plaintiffs would have submitted comments opposing the change in time for the agency to consider those comments before committing to the change. By implementing first and asking for comments later, the FMCS deprived Plaintiffs and other adversely affected persons of the ability to submit comments at a time when the relevant

decision-makers would naturally be more receptive to outside input and when there consequently would have been a greater opportunity to persuade the agency.

97. The FMCS is wrong to assert that notice and comment was not required because it had "good cause" to issue the IFR. This good cause exception "is to be narrowly construed and only reluctantly countenanced," and "is not an escape clause; its use should be limited to emergency situations." *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (internal quotations omitted).

98. There was no emergency situation here. A purported need to clarify a regulation—especially one as clear as the pre-IFR Part 1404—does not meet the high bar of rendering notice and comment "impracticable, unnecessary, or contrary to the public interest."

99. In light of the April Memorandum and the IFR's introduction discussing Executive Order 14251, the IFR affects Plaintiffs' substantive rights. It does so by prohibiting the FMCS from providing arbitration panels absent lack of affirmative consent from an agency covered by the Exclusion Orders—panels that, under many CBAs, must be provided in order for the union and the employees it represents to enforce their substantive contract rights when they have a claim that the agency has violated the CBA.

100. The APA instructs that a reviewing court shall "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

101. The IFR does not adhere to the procedural requirements of 5 U.S.C. § 553(b) and (c) and thus violates the APA. It is therefore unlawful and should be set aside.

## **Count III**

*IFR - Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)*

102. Plaintiffs reallege and incorporate Paragraphs 1 through 101.

103. Agency action is arbitrary and capricious if it is unreasonable or not reasonably explained, including, for example, where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

104. "An agency may not . . . depart from a prior policy sub silentio or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Instead, it must give a "reasoned explanation" for such departure and "show that there are good reasons for the new policy." *Id.* at 515–16.

105. The IFR fails to provide a reasoned explanation for reversing the FMCS's longstanding practice of providing arbitration panels upon unilateral request.

106. More than four decades ago, the FMCS put into place regulations providing that it "will submit a panel" upon request by one party, while noting that "any submission of a panel should not be construed as anything more than compliance with a request and does not necessarily reflect the contractu[]al requirements of the parties." 44 Fed. Reg. 13008, 13009 (March 9, 1979).

107. While the particular verbiage used to express that policy has changed in minor ways over time, FMCS's arbitration service regulations have consistently maintained that unilateral requests for panels will be honored, while noting that by issuing a panel, FMCS does not weigh in on the arbitrability of the parties' dispute.

108. The IFR does not explain how this consistent practice is unclear or "may create confusion about FMCS's obligations."

109. Under the guise of clarifying its longstanding regulations, the IFR transforms FMCS from a facilitator of arbitration to a decision-making body, instituting a new "threshold inquiry" to determine whether issuing a panel would violate "applicable law, a court order, or FMCS's statutory or regulatory authority."

110. Other than noting that FMCS "may request the parties' agreement, a statutory provision, regulation, court order, written authorization, or other information needed to determine whether FMCS may provide the requested service," no further details are given regarding the scope and extent of the new inquiry before providing an arbitration panel, nor whether or how a party could dispute the decision made.

111. FMCS's own explanation for why this change is needed is internally inconsistent with its insistence that by conducting this inquiry, it is *not* deciding "the validity of any collective-bargaining agreement, the merits of any grievance, the arbitrability of any dispute, or the parties' rights or obligations under any agreement or law." FMCS does not—and cannot—explain how an inquiry that calls for examination of agreements, statutes, and regulations to determine whether a party has a right to an arbitration panel aligns with regulatory provisions stating that FMCS is not determining arbitrability, the validity of a CBA, or the party's "rights or obligations under any agreement or law."

112. FMCS's reliance on sovereign immunity to justify its new change does not constitute reasoned decision making. Whether the government has in fact authorized binding arbitration over a dispute is a question of arbitrability that FMCS lacks authority to decide. The new IFR arrogates this authority to FMCS. It is incoherent to both claim that the FMCS is not deciding arbitrability, and that the FMCS is preemptively determining whether an arbitration proceeding would be "unlawful" because the parties have not agreed to arbitrate the dispute.

113. FMCS's explanation for its amendment to Section 1404.10 is likewise reliant on this doublespeak by asserting, on the one hand, that the IFR "preserves the rule that OA will not decide the merits of a claim by either party that a dispute is not subject to arbitration" while declaring, on the other, that FMCS, before issuing a panel, will hear from the parties and then decide whether arbitrating the dispute would be lawful.

114. The IFR's change to Section 1404.12, by permitting FMCS not to appoint an arbitrator even when one party fails to provide its ranked preferences for arbitrators, further eliminates an opportunity for parties to obtain an arbitrator empowered to determine both the arbitrability of its dispute and its merits. FMCS fails to explain how its new rule , in which it takes submissions from the parties and reviews contract language in order to make a threshold decision whether to deny an appointment, coheres with its position that it is not deciding the arbitrability of the underlying dispute.

115. Accordingly, the IFR should be held unlawful and set aside.

## Relief Requested

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

A. Declaring that the IFR violates § 706(2)(D) of the Administrative Procedure Act;

B. Declaring that the April Memorandum and the IFR violate § 706(2)(A) of the Administrative Procedure Act;

C. Vacating the April Memorandum, including its requirement that FMCS not timely issue arbitration panel requests to unions who request them to resolve disputes with agencies covered by Exclusion Orders, and the IFR;

D. Requiring Defendants to abide by the lawful, pre-IFR iteration of 29 C.F.R. §§ 1404.9 and 1404.10 and provide arbitration panel requests to federal unions who request them unilaterally;

E. Granting Plaintiffs' attorney's fees and costs; and

F. Granting such other relief as this Court may deem just and proper.

Dated: August 21, 2026

Respectfully submitted,

/s/ Leon Dayan
Leon Dayan (DC Bar No. 444144)
J. Alexander Rowell (DC Bar No. 1780007)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street NW, Suite 1000
Washington, DC 20005
(202) 842-2600
(202) 842-1888 (fax)
ldayan@bredhoff.com
arowell@bredhoff.com

*Counsel for Plaintiffs*

Rushab B. Sanghvi (DC Bar No. 1012814)
Andres M. Grajales (DC Bar No. 476894)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street NW
Washington, DC 20001
Tel: (202) 639-6426
SanghR@afge.org
Grajaa@afge.org

*Counsel for Plaintiff AFGE*

Paras N. Shah (DC Bar No. 983881)
General Counsel
Allison C. Giles (DC Bar No. 439705)
Associate General Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street NW, Suite 1000
Washington, DC 20001

(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org

*Counsel for Plaintiff NTEU*

Yvette M. Piacsek (DC Bar No. 980302)
General Counsel
NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO
1225 New York Avenue NW, Suite 450
Washington, DC 20005
Tel: (202) 216-4428
ypiacsek@nffe.org

*Counsel for Plaintiff NFFE*

Maria Teresa Ellis (DC Bar No. 495855)
General Counsel
INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, AFL-CIO
513 C Street NE
Washington, DC 20002
(202) 239-4880
tellis@ifpte.org

*Counsel for Plaintiff IFPTE*