# Exhibit 2

requirements found in §§ 382.141(a)(6) and 14 CFR 382.63(h)(1) are delayed until April 30, 2027.

**ADDRESSES:** This notification of enforcement discretion, the notice of proposed rulemakings (NPRMs), all comments received, the final rules, and all background material may be viewed online at *www.regulations.gov* using the docket numbers listed above. Electronic retrieval help and guidelines are available on the website. It is available 24 hours each day, 365 days each year. An electronic copy of this document may also be downloaded from the Office of the Federal Register's website at *www.federalregister.gov* and the Government Publishing Office's website at *www.GovInfo.gov.*

**FOR FURTHER INFORMATION CONTACT:** Tori Ford, Robert Gorman, or Blane Workie, Office of Aviation Consumer Protection, U.S. Department of Transportation, 1200 New Jersey Avenue SE, Washington, DC 20590, 202–366–9342 (phone), *victoria.ford@dot.gov, robert.gorman@dot.gov,* or *blane.workie@dot.gov* (email).

**SUPPLEMENTARY INFORMATION:** On August 1, 2023, DOT issued a final rule on ''Accessible Lavatories on Single-Aisle Aircraft'' (Accessible Lavatory Rule).[1] Among other things, this rule requires airlines to train flight attendants to proficiency on an *annual* basis to assist in transporting qualified individuals with disabilities to and from the lavatory from the aircraft seat using an on-board wheelchair (OBW).[2] This training must include hands-on training on the retrieval, assembly, stowage, transfer features, and use of the OBW. It also requires flight attendants to be trained on the accessibility features of lavatories themselves. This provision of the rule is scheduled to become effective on October 2, 2026.

In May 2024, Congress passed the Federal Aviation Administration (FAA) Reauthorization Act of 2024 (2024 FAA Act). Section 542 of the 2024 FAA Act directed the Department to issue a rulemaking to develop requirements for minimum training standards for airline personnel or contractors who assist wheelchair users who board or deplane using an aisle chair or other boarding devices, and airline personnel or contractors who stow wheelchairs and scooters on aircraft. Under the 2024 FAA Act, recurrent training must be conducted within 18 months of initial training, and trainees must be recertified on the job every 18 months thereafter by a relevant superior to remain qualified for providing aisle chair assistance. On December 17, 2024, DOT issued a final rule on ''Ensuring Safe Accommodations for Air Travelers With Disabilities Using Wheelchairs'' (Wheelchair Rule I).[3] The final rule, which included certain provisions required by the 2024 FAA Act such as training requirements, expanded existing airline obligations in 14 CFR part 382 regarding the treatment of air travelers with disabilities. In that regulation, the Department requires initial training by June 17, 2026, and at least once every twelve months thereafter for these personnel.[4]

Recently, the Department has initiated a new rulemaking titled ''Airline Obligations to Accommodate Air Travelers with Disabilities Using Wheelchairs'' (Wheelchair Rule II)[5] that will address four provisions of Wheelchair Rule I related to airline liability for mishandled wheelchairs,[6] refresher training frequency,[7] pre-departure notifications,[8] and fare difference reimbursements.[9] The Department previously announced that it would exercise its enforcement discretion and not enforce these requirements while it engages in the rulemaking process.[10] In that prior announcement, the Department stated that the earliest date it expected to make a decision on whether to move forward with a final rule was December 31, 2026. However, the Department now anticipates that the earliest date it will be decided is April 30, 2027. Consequently, the Department is expanding its exercise of enforcement discretion and extending the temporary compliance pause for the four affected Wheelchair Rule I provisions from December 31, 2026 to April 30, 2027.

Recently, a large U.S. carrier asked the Department for flexibility in enforcement regarding the annual training requirements of the Accessible Lavatory Rule. The carrier explained that it received approval from the FAA to conduct certain flight attendant safety training, as required by 14 CFR part 121, on an 18-month cycle rather than a 12-month cycle. The carrier argued that it is inefficient to conduct one type of training (required by DOT) on an annual basis while conducting another type of training (required by the FAA) on an 18-month basis.[11]

To ensure that the various training requirements in part 382 are consistent with the law and Administration policies, the Department has decided that the training frequency issue raised by the Accessible Lavatory Rule will be addressed within the scope of Wheelchair Rule II. Wheelchair Rule II will consider the frequency of refresher training for flight attendants on how to assist passengers to and from aircraft lavatories, including hands-on training with the OBWs and the accessibility features of the lavatories. As such, the Department believes that the public interest is best served by the Department extending its temporary pause in enforcement to the frequency of the training requirement in 14 CFR 382.63(h)(1) to align with the updated Wheelchair Rule II. This notice of enforcement discretion does not affect the enforcement of requirements in the Accessible Lavatory Rule other than the one identified above.

Issued in Washington, DC, under authority delegated in 49 CFR 1.27(a):

**Gregory Zerzan,**

*General Counsel.*

[FR Doc. 2026–15835 Filed 8–3–26; 8:45 am]

BILLING CODE 4910–9X–P

[1] 88 FR 50020 (Aug. 1, 2023).

[2] *See* 14 CFR 382.63(h)(1). OBWs are specialized wheelchairs that are stowed onboard the aircraft. They are used to transport passengers between the aircraft seat and the lavatory, often while in-flight. They are distinct from both standard wheelchairs (used to transport passengers within the airport) and aisle chairs (used for enplaning and deplaning).

[3] 89 FR 102398 (Dec. 17, 2024).

[4] 14 CFR 382.141(a)(6).

[5] Spring 2025 Unified Agenda of Regulatory and Deregulatory Actions, Department of Transportation, Airline Obligations to Accommodate Air Travelers with Disabilities Using Wheelchairs (RIN 2105–AF35) at *https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202504&RIN=2105-AF35.*

[6] Codified at 14 CFR 382.130(a).

[7] Codified at 14 CFR 382.141(a)(6).

[8] Codified at 14 CFR 382.125(e).

[9] Codified at 14 CFR 382.132.

[10] *See* 90 FR 46751 (Sept. 30, 2025). Aside from refresher training frequency, our exercise of enforcement discretion applied to provisions of Wheelchair Rule I related to airline liability for mishandled wheelchairs, pre-departure notifications, and fare difference reimbursements.

[11] Specifically, the carrier stated that this ''incongruence'' would require the carrier to transport almost 30,000 flight attendants to training sessions off-cycle, removing them from operations for an additional day each year.

## FEDERAL MEDIATION AND CONCILIATION SERVICE

## 29 CFR PART 1404

**RIN 3076–AA31**

### Requests for Arbitration Panels

**AGENCY:** Federal Mediation and Conciliation Service.

**ACTION:** Interim final rule; request for comments.

**SUMMARY:** The Federal Mediation and Conciliation Service (FMCS) is issuing an interim final rule with requests for comments to amend its arbitration

services regulations. The interim final rule clarifies the circumstances in which the Office of Arbitration (OA) may decline to issue an arbitration panel, make a direct appointment, or provide related arbitration services. The rule would remove language that could be read to require FMCS to honor every unilateral request for an arbitration panel, regardless of legal constraints or FMCS's authority. FMCS seeks public comment on this interim final rule.

**DATES:** This interim final rule is effective August 4, 2026.

*Comment date:* Comments must be received on or before September 3, 2026.

FMCS will consider all timely comments received. After reviewing the comments, FMCS may revise, withdraw, or confirm this interim final rule through a subsequent document published in the **Federal Register**.

**ADDRESSES:** You may submit comments for this interim final rule within the Federal eRulemaking Portal at *https://www.regulations.gov/.* Follow the instructions for submitting comments.

All comments must be received by the end of the comment period for them to be considered. All comments and other submissions received generally will be posted on the internet at *regulations.gov* as they are received, without change, including any personal information provided. However, FMCS retains discretion to redact personal or sensitive information, including but not limited to personal or sensitive information pertaining to third parties, where appropriate.

A summary of this rule may be found in the docket for this rulemaking at *www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Anna Davis, General Counsel, Federal Mediation and Conciliation Service, (202) 606–3737, [EMAIL] *adavis@fmcs.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. Background and Purpose

FMCS administers a Roster of Arbitrators and provides arbitration-related services under 29 CFR part 1404. Those regulations provide that voluntary arbitration and fact-finding are important means of resolving labor disputes and that OA administers requests for labor arbitration services. Current § 1404.9(b) states that a panel request, ''whether joint or unilateral, will be honored,'' while also stating that FMCS does not adopt any position on the status of an arbitration agreement, arbitrability of a dispute, or the terms of the parties' contract by issuing a panel or appointing an arbitrator. Current § 1404.10 similarly provides that the Office of Arbitration will not decide that a dispute is not subject to arbitration.

FMCS's authority is administrative and facilitative. Current § 1404.9(c) provides that FMCS has no power to compel parties to appear before an arbitrator, enforce an agreement to arbitrate, compel parties to arbitrate any issue, influence or set aside an arbitrator's decision, or compel, deny, or modify payment of compensation to an arbitrator. Current § 1404.9(d) also recognizes that the OA may decline to submit a panel or appoint an arbitrator if the request is overly burdensome or otherwise impracticable.

FMCS has determined that the current sentence stating that every joint or unilateral panel request ''will be honored'' could be misread as requiring FMCS to provide panels even where doing so would be inconsistent with law, a court order, or FMCS's statutory or regulatory authority. That was not the intended effect of the regulation. The proposed rule clarifies that FMCS retains authority to make limited threshold determinations concerning whether FMCS may lawfully provide the requested service.

FMCS's statutory authorities support that clarification. Section 203 of the Labor Management Relations Act authorizes FMCS to make services available to assist in the resolution of labor disputes and, in subsection (f), to make its services available to Federal agencies to aid in the resolution of disputes under subchapter IV of chapter 5 of title 5, including by maintaining rosters of neutrals and arbitrators. Those services are subject to provisions in 5 U.S.C. 572(a) and 572(c) making clear that alternative dispute-resolution procedures are voluntary and require mutual consent. In the Federal-sector collective-bargaining context, 5 U.S.C. 7121 separately governs negotiated grievance procedures and provides that unresolved grievances under such procedures are subject to binding arbitration invoked by either the exclusive representative or the agency.

Recent executive orders excluding certain agencies or subdivisions from Federal labor-management relations have increased the likelihood that FMCS will receive requests for arbitration panels in circumstances where one party asserts that participation in the requested arbitration process is prohibited by law, court order or otherwise outside FMCS's statutory or regulatory authority. Executive Order 14251 excluded identified agencies and subdivisions from coverage under chapter 71 of title 5 based on the President's national security determinations, and directed agencies covered by the exclusion, upon termination of applicable collective-bargaining agreements, to terminate agency participation in any pending grievance proceedings under 5 U.S.C. 7121. FMCS recognizes that litigation concerning these matters may affect particular requests and that FMCS must administer its arbitration services consistent with applicable law and any court orders.

This rule therefore clarifies the limited screening role FMCS may perform before issuing a panel or making an appointment. Where a request presents a threshold question about FMCS's authority to provide the requested service, FMCS may seek information from the parties and may decline the request, hold the request in abeyance, or take another administratively appropriate action. FMCS's action on such a threshold question does not adjudicate the parties' underlying contractual, statutory, or arbitrability dispute. These changes reflect the longstanding principle that arbitration is voluntary and correct confusing and potentially misleading language in FMCS's current regulation.

## II. Regulatory Changes

This interim final rule amends 29 CFR part 1404, subpart C, which governs FMCS arbitration services, to clarify OA's authority to screen arbitration-panel and appointment requests before providing FMCS services. The rule preserves FMCS's existing role as an administrative provider of arbitration panels and appointments, but makes clear that FMCS is not required to issue a panel, make a direct appointment, or provide related arbitration services where doing so would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority.

*Section 1404.9—Procedures for Requesting Arbitration Lists and Panels*

The rule revises § 1404.9(b). Current § 1404.9(b) provides that, although parties are encouraged to make joint requests, a panel request ''whether joint or unilateral, will be honored,'' while also stating that issuance of a panel does not signify any FMCS position on the arbitration agreement, arbitrability, or contract terms.

The revised text retains the basic rule that, upon request, OA will refer a randomly selected panel of seven arbitrators to parties to an arbitration or fact-finding agreement, or where labor arbitration or fact-finding may be provided by statute. It also retains the requirement that each panel member's

biographical sketch include the background, qualifications, experience, and fee information furnished to FMCS by the arbitrator.

The rule clarifies when a panel request may be unilateral and when joint authorization is required. Under the revised text, a request for a panel may be joint or unilateral unless part 1404, applicable law, or the parties' agreement requires joint authorization for the requested service. Requests for a panel of other than seven names, for direct appointment of an arbitrator, or for special qualifications or other special service continue to require joint submission or authorization by both parties pursuant to mutual agreement.

The rule adds a new limited threshold-inquiry provision. OA may conduct a limited threshold inquiry to determine whether issuing a panel, making a direct appointment, or providing related arbitration services would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority. In conducting that inquiry, OA may request the parties' agreement, a statutory provision, regulation, court order, written authorization, or other information needed to determine whether FMCS may provide the requested service.

Following that limited threshold inquiry, FMCS may issue the panel or appointment, decline to provide the requested service, hold the request in abeyance, or take another administratively appropriate action. The revised text further clarifies that FMCS's issuance of a panel or appointment, refusal to issue a panel or appointment, or decision to hold a request in abeyance does not decide the validity of any collective-bargaining agreement, the merits of any grievance, the arbitrability of any dispute, or the parties' rights or obligations under any agreement or law.

For example, the doctrine of sovereign immunity requires statutory authorization before an agency can engage in binding arbitration. Without such authorization agencies cannot be brought before an external tribunal.[1] Congress has provided statutory authorization for agencies to engage in binding arbitration in a number of contexts involving both private parties and Federal employees.[2] However, in situations where statutory authorization is not available, the executive branch's obligation to take care that the law is faithfully executed precludes FMCS from providing panels for unlawful arbitration proceedings. FMCS cannot facilitate constitutional violations.

*Section 1404.10—Arbitrability*

The rule revises § 1404.10 to conform to the revised threshold-inquiry language in § 1404.9. The revised section preserves the rule that OA will not decide the merits of a claim by either party that a dispute is not subject to arbitration. It adds that OA may nevertheless conduct a limited threshold inquiry to determine whether FMCS may lawfully submit a panel, make a direct appointment, or provide related arbitration services under part 1404, consistent with § 1404.9.

*Section 1404.11—Nominations of Arbitrators*

The rule revises § 1404.11(b) and (c). Current § 1404.11(b) provides that OA will provide a randomly selected panel of arbitrators located near the hearing site, unless the parties jointly request special qualifications or no geographic restrictions. Current § 1404.11(c) provides that, if the parties do not agree on an arbitrator from the first panel, OA will furnish up to five additional panels upon joint request, or upon unilateral request if authorized by the applicable collective-bargaining agreement, and payment of additional fees.

The revised § 1404.11(b) makes nominations of arbitrators expressly subject to §§ 1404.9 and 1404.10. This conforming change ensures that ordinary panel nomination procedures do not override FMCS's threshold authority to decline or hold a request in abeyance where providing the requested service would be inconsistent with law, a court order, or FMCS's authority.

The rule also updates the nondiscrimination sentence in § 1404.11(b). It replaces ''gender'' with ''sex'' and adds a catchall prohibiting inclusions or exclusions based on ''any other basis prohibited by applicable law.''

The revised § 1404.11(c) preserves the existing additional-panel process but expands the sources of authority that may support a unilateral request for additional panels. Additional panels may be furnished upon joint request, or upon unilateral request if authorized by the applicable collective-bargaining agreement, statute, regulation, court order, or other binding authority, and payment of additional fees. The revised paragraph also states that the additional-panel process is subject to §§ 1404.9 and 1404.10, and that OA may decline to furnish an additional panel or hold the request in abeyance if furnishing the panel would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority.

*Section 1404.12—Selection by Parties and Appointment of Arbitrators*

The rule revises § 1404.12(b) and (c). Current § 1404.12(b) sets out the ranked-preference process for selecting an arbitrator from a panel and provides that, if one party submits its ranked preferences and the other party fails to respond within 14 days, the first party's choice will be honored. Current § 1404.12(c) provides that OA will make a direct appointment only upon joint request or as otherwise provided by part 1404.

The revised § 1404.12(b) retains the existing ranked preference process. Where the parties' collective-bargaining agreement permits each party to separately notify OA of its ranked preferences, or is silent on the selection method, FMCS will ask each party to rank the panel. If both parties respond, the arbitrator with the lowest combined number will be appointed. If one party fails to respond, the first party's choice will be honored.

The rule adds a conforming limitation to § 1404.12(b): the paragraph is subject to § 1404.9(b) and does not require OA to make an appointment where OA determines that the appointment would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority.

The revised § 1404.12(c) likewise makes direct appointments subject to §§ 1404.9 and 1404.10. OA will make a direct appointment only upon joint request or as otherwise provided by part 1404, but that appointment authority is now expressly subject to the rule's threshold-screening provisions.

## III. Expected Impact

*A. Statement of Need*

FMCS is issuing this interim final rule to clarify its arbitration services regulations and prevent misinterpretation of current § 1404.9(b). The current language could be read to require FMCS to honor every unilateral request for an arbitration panel even when providing a panel, making a direct appointment, or providing related arbitration services would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority.

The interim final rule clarifies that OA may conduct a limited threshold inquiry into whether FMCS may

[1] *See United States* v. *Shaw,* 309 U.S. 495, 500–501 (1940) (''without specific statutory consent, no suit may be brought against the United States. No officer, by his action, can confer jurisdiction''). *See also U.S.* v. *Mitchell,* 463 U.S. 206, 215–216 (1983) (without statutory authorization ''no contracting officer or other official is empowered to consent to suit against the United States.'').

[2] *See* 5 U.S.C. 572 and 5 U.S.C. 7121.

lawfully provide the requested administrative arbitration service. The rule does not authorize FMCS to decide the merits of any grievance, the validity of any collective-bargaining agreement, the arbitrability of any dispute, or the rights or obligations of the parties under any agreement or law.

*B. Costs*

FMCS does not expect the rule to impose significant costs. The rule does not require any party to submit new recurring reports, maintain new records, or change the substantive terms of any collective-bargaining agreement. The rule clarifies FMCS's internal processing standards for arbitration-panel requests and related services. Some parties may submit information to FMCS in response to a threshold inquiry, but FMCS expects such submissions to be limited to circumstances in which a request presents a legal or authority-based objection to FMCS providing the requested service.

FMCS also expects any cost effects to be limited because the rule does not affect parties' ability to pursue any available remedy before the FLRA, a court, or another tribunal with jurisdiction. Where FMCS determines that it cannot provide a requested panel or appointment, parties remain free to pursue any other procedure or remedy available under law or their agreement.

*C. Benefits*

The rule will improve clarity, reduce confusion, and help ensure that FMCS administers its arbitration services consistent with law. The rule will make clear that FMCS's existing panel procedures do not require FMCS to provide a panel or appointment where doing so would exceed FMCS's authority or conflict with applicable law or court orders. The rule will also help parties understand that FMCS's threshold processing decisions do not decide the merits of a grievance, the validity of a collective-bargaining agreement, or the arbitrability of a dispute.

*D. Alternatives Considered*

FMCS considered retaining the current text of § 1404.9(b), but rejected that alternative because the phrase ''whether joint or unilateral, will be honored'' may be read too broadly and may create confusion about FMCS's obligations. FMCS also considered adopting a rule under which FMCS would decide arbitrability disputes before issuing a panel, but rejected that alternative because FMCS's role is administrative and facilitative, and current § 1404.10 provides that the Office of Arbitration does not decide the merits of arbitrability claims. The interim final rule adopts a narrower approach by authorizing only a limited threshold inquiry into FMCS's own authority to provide the requested administrative arbitration service.

*E. Reliance Interests*

FMCS recognizes that some parties may have relied on current § 1404.9(b) and prior FMCS practice when drafting or administering arbitration procedures. This interim final rule does not retroactively invalidate any panel previously issued, appointment previously made, or request previously submitted. Nor does it alter any party's contractual or statutory rights. The rule clarifies only FMCS's own authority and procedures for providing arbitration panels, appointments, and related services.

To the extent parties expected FMCS to honor unilateral panel requests in all circumstances, FMCS has determined that any such reliance is outweighed by the need to ensure that FMCS does not provide arbitration services where doing so would be inconsistent with applicable law, a court order, or FMCS's authority. Further, FMCS does not believe any expectation that FMCS would honor requests that conflicted with applicable law to be reasonable. FMCS also notes that parties remain free to pursue available remedies before the FLRA, a court, or another tribunal with jurisdiction. For example, any allegations that a party failed to comply with any provision of a CBA, including any arbitration provision, may be presented to the Federal Labor Relations Authority as an unfair labor practice pursuant to 5 U.S.C. 7116.

*F. Severability*

FMCS intends the provisions of this interim final rule to be severable. If any provision of this rule, or the application of any provision to any person or circumstance, is held invalid, FMCS intends that the remainder of the rule and its application to other persons or circumstances remain in effect to the fullest extent permitted by law.

**IV. Regulatory Compliance**

*A. Administrative Procedure Act*

FMCS is issuing this rule as an interim final rule with request for comments. FMCS finds good cause under 5 U.S.C. 553(b)(B) to issue this rule without first publishing a notice of proposed rulemaking because prior notice and public procedure are impracticable, unnecessary, and contrary to the public interest. Current § 1404.9(b) could be read to require OA to honor every joint or unilateral request for an arbitration panel regardless of whether providing the requested service would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority. FMCS has determined that it is necessary to clarify promptly that FMCS retains authority to conduct a limited threshold inquiry and to decline, hold in abeyance, or otherwise act on requests that FMCS cannot lawfully process or that would otherwise be inconsistent with law.

Delaying issuance of this clarification until after completion of notice-and-comment rulemaking would risk continued confusion regarding FMCS's authority and obligations when presented with requests that raise threshold legal or authority-based objections. FMCS therefore finds that issuing this rule on an interim final basis is in the public interest.

Although FMCS finds good cause to issue this rule without prior notice and comment, FMCS invites public comment on all aspects of this interim final rule. FMCS will consider all timely comments and may revise, withdraw, delay the effective date of, or confirm this interim final rule through a subsequent **Federal Register** document.

FMCS also finds good cause under 5 U.S.C. 553(d)(3) to make this rule effective upon publication. The same reasons supporting issuance without prior notice and comment also support immediate effectiveness because delaying the rule's effective date would perpetuate uncertainty regarding FMCS's authority to decline, hold in abeyance, or otherwise act on requests for arbitration services that FMCS may not lawfully process or that would otherwise be inconsistent with law.

*B. Regulatory Review*

FMCS has considered the costs and benefits of this rule. The rule clarifies FMCS's procedures for providing arbitration panels and appointments and does not impose significant compliance costs. OIRA has determined that this rule is not a significant regulatory action under Executive Order 12866. This rule is not an Executive Order 14192 regulatory action because it imposes no more than de minimis regulatory costs.

*C. Regulatory Flexibility Act*

Because FMCS is issuing this rule without prior notice and comment based on the good-cause exception in 5 U.S.C. 553(b)(B), the requirements of the Regulatory Flexibility Act for an initial or final regulatory flexibility analysis do not apply. In any event, FMCS certifies

that this interim final rule will not have a significant economic impact on a substantial number of small entities.

This rule clarifies FMCS's procedures for processing requests for arbitration panels, direct appointments, and related arbitration services. It does not impose new substantive compliance obligations, recurring reporting requirements, or recordkeeping requirements on small entities. The rule does not alter the fee schedule in appendix A to part 1404. To the extent a small entity requests FMCS arbitration services, the rule may affect whether FMCS issues a panel or appointment in the limited circumstance where FMCS determines that providing the requested service would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority. FMCS expects any economic effect to be minimal.

*D. Federalism*

FMCS has analyzed this rule under Executive Order 13132 and has determined that it will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government.

*E. Civil Justice Reform*

This rulemaking meets the applicable standards set forth in section 3(a) and (b)(2) of Executive Order 12988.

*F. Unfunded Mandates Reform Act*

This rule will not result in expenditures by State, local, or tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, adjusted for inflation. Accordingly, FMCS has not prepared a written statement under the Unfunded Mandates Reform Act.

*G. Congressional Review Act*

FMCS will submit this interim final rule to Congress and the Comptroller General in accordance with 5 U.S.C. 801. OIRA has determined that this rule is not a ''major rule'' within the meaning of 5 U.S.C. 804(2).

*H. Paperwork Reduction Act*

This rule does not impose a new collection of information within the meaning of the Paperwork Reduction Act because it does not require standardized reporting or recordkeeping by the public. If FMCS later revises Form R–43 or creates a standardized submission requirement to implement threshold inquiries under this rule, FMCS will evaluate whether approval from OMB is required under the Paperwork Reduction Act.

**List of Subjects in 29 Part 1404**

Administrative practice and procedures; Arbitration; Labor management relations.

For the reasons stated in the preamble, the Federal Mediation and Conciliation Service amends 29 CFR part 1404 as follows:

## PART 1404—ARBITRATION SERVICES

■ 1. The authority citation continues to read as follows:

**Authority:** 29 U.S.C. 172 and 29 U.S.C. 173 *et seq.*

## Subpart C—Procedures for Arbitration Services

■ 2. Amend § 1404.9 by revising paragraph (b) to read as follows:

### § 1404.9 Procedures for requesting arbitration lists and panels.

* * * * *

(b)(1) Upon request, OA will refer a randomly selected panel of seven arbitrators to parties to an agreement to arbitrate or engage in fact-finding, or where labor arbitration or fact-finding may be provided by statute. A biographical sketch will be provided for each member of the panel. This sketch states the background, qualifications, experience, and all fees as furnished to OA by the arbitrator.

(2) A request for a panel may be joint or unilateral unless this part, applicable law, or the parties' agreement requires joint authorization for the requested service. Requests for a panel of other than seven names, for direct appointment of an arbitrator, or for special qualifications or other special service will not be honored unless jointly submitted or authorized by both parties pursuant to mutual agreement.

(3) OA may conduct a limited threshold inquiry to determine whether issuing a panel, making a direct appointment, or providing related arbitration services would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority. OA may request from the parties the agreement, statutory provision, regulation, court order, written authorization, or other information necessary to determine whether OA may provide the requested service. Following such inquiry, FMCS may issue the panel or appointment, decline to provide the requested service, hold the request in abeyance, or take other administratively appropriate action.

(4) OA's issuance of a panel or appointment, refusal to issue a panel or appointment, or decision to hold a request in abeyance does not constitute a decision on the validity of any collective-bargaining agreement, the merits of any grievance, the arbitrability of any dispute, or the rights or obligations of the parties under any agreement or law.

* * * * *

■ 3. Revise § 1404.10 to read as follows:

### § 1404.10 Arbitrability.

OA will not decide the merits of a claim by either party that a dispute is not subject to arbitration. OA may, however, conduct a limited threshold inquiry to determine whether FMCS may lawfully submit a panel, make a direct appointment, or provide related arbitration services under this part, consistent with § 1404.9.

■ 4. Amend § 1404.11 by revising paragraphs (b) and (c) to read as follows:

### § 1404.11 Nominations of arbitrators.

* * * * *

(b) Subject to §§ 1404.9 and 1404.10, OA will provide a randomly selected panel of arbitrators located in geographical areas in proximity of the hearing site, as specified in the request. The parties may jointly request special qualification of arbitrators experienced in certain issues or industries or that possess certain backgrounds, or a panel with no geographic restrictions within the U.S. OA has no obligation to put an individual on any given panel or on a minimum number of panels in any fixed period. If at any time both parties request that a name or names be included, or omitted, from a panel, such name or names will be included, or omitted, unless the number of names is excessive. These inclusions/exclusions may not discriminate against anyone because of age, race, color, sex, national origin, disability, genetic information, religion, or any other basis prohibited by applicable law.

(c) If the parties do not agree on an arbitrator from the first panel, OA will furnish up to five additional panels to the parties upon joint request, or upon a unilateral request if authorized by the applicable collective bargaining agreement, statute, regulation, court order, or other binding authority, and payment of additional fees. This paragraph is subject to §§ 1404.9 and 1404.10. OA may decline to furnish an additional panel, or may hold the request in abeyance, if OA determines under § 1404.9(b) that furnishing the additional panel would be inconsistent with applicable law, a court order, or

FMCS's statutory or regulatory authority.

■ 5. Amend § 1404.12 by revising paragraphs (b) and (c) to read as follows:

**§ 1404.12 Selection by parties and appointment of arbitrators.**

* * * * *

(b) Where the parties' collective bargaining agreement permits each party to separately notify OA of its ranked order of preference, or is silent on the manner of selecting arbitrators, FMCS will ask each party to advise OA of its order of preference by numbering each name on the panel and submitting the numbered list in writing to OA. Upon receiving the rank order from one party, OA will notify the other party that it has fourteen (14) days in which to submit its selections. Where both parties respond, the name that has the lowest combined number will be appointed. If the other party fails to respond, the first party's choice will be honored. This paragraph is subject to § 1404.9(b) and does not require OA to make an appointment where OA determines that the appointment would be inconsistent with applicable law, a court order, or FMCS's statutory or regulatory authority.

(c) Subject to §§ 1404.9 and 1404.10, OA will make a direct appointment of an arbitrator only upon joint request or as otherwise provided by this part.

Dated: July 31, 2026.

**Anna Davis,**

*General Counsel.*

[FR Doc. 2026–15798 Filed 8–3–26; 8:45 am]

**BILLING CODE 6732–01–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Coast Guard**

**33 CFR Part 165**

**[Docket Number USCG–2026–0957]**

**RIN 1625–AA00**

## Safety Zone; Ohio River; River, Aurora, IN

**AGENCY:** Coast Guard, Department of Homeland Security.

**ACTION:** Temporary final rule.

**SUMMARY:** The Coast Guard is establishing a temporary safety zone for navigable waters on the Ohio River, from mile marker (MM) 499 to MM 497 in Aurora, Indiana. The safety zone is needed to protect personnel, vessels, and the marine environment from potential hazards associated with an over water powerline replacement. Entry of vessels or persons into this zone is prohibited unless specifically authorized by the Captain of the Port, Ohio Valley, or their designated representative.

**DATES:** This rule is effective from August 3, 2026, through August 9, 2026. It will be enforced from 7 a.m. to 5 p.m. each day during this period, or until operations are complete, whichever occurs first.

**ADDRESSES:** To view available documents go to *https://www.regulations.gov* and search for USCG–2026–0957.

**FOR FURTHER INFORMATION CONTACT:** If you have questions about this rule, contact MST1 Jean Jimenez Sosa, MSD Cincinnati, U.S. Coast Guard; telephone 206–827–1363, or email *Jean.C.JimenezSosa@uscg.mil.*

**SUPPLEMENTARY INFORMATION:**

### I. Table of Abbreviations

CFR Code of Federal Regulations
COTP Captain of the Port
DHS Department of Homeland Security
FR Federal Register
NPRM Notice of proposed rulemaking
§ Section
U.S.C. United States Code

### II. Background and Authority

The Coast Guard received notification that Duke Energy will be conducting aerial power line replacements within the Ohio River near Aurora, IN. Hazards from this project include but are not limited to deployment of heavy machinery, and various other activities which create hazards for workers and the public. The Captain of the Port (COTP) Ohio Valley has determined that potential hazards associated with power line replacements are a safety concern for anyone within the work area. Therefore, the COTP is issuing this rule under the authority in 46 U.S.C. 70034, which is needed to protect personnel, vessels, and the marine environment in the navigable waters within the safety zone.

Because of these potential hazards, the Coast Guard is issuing this rule without prior notice and comment. As is authorized by 5 U.S.C. 553(b)(B), the Coast Guard finds that good cause exists for not publishing a notice of proposed rulemaking (NPRM) with respect to this rule because it is impracticable and contrary to the public interest. The Coast Guard was notified of this event on July 13, 2026, but we must establish this safety zone by August 9, 2026, to protect personnel, vessels, and the marine environment. Therefore, we do not have enough time to solicit and respond to comments.

For the same reason, the Coast Guard finds that under 5 U.S.C. 553(d)(3), good cause exists for making this rule effective less than 30 days after publication in the **Federal Register**.

### III. Discussion of the Rule

This rule establishes a safety zone from August 3, 2026, through August 9, 2026. The rule will be enforced from 7 a.m. to 5 p.m. on each day during this period, or until operations are complete. The safety zone will cover all navigable waters of Ohio River, from mile marker (MM) 499 to MM 497 in Aurora, Indiana. Vessels and persons will not be allowed to enter the zone during this time, unless authorized by the Captain of the Port.

### IV. Regulatory Analyses

We developed this rule after considering numerous statutes and Executive orders related to rulemaking. Below we summarize our analyses based on a number of these statutes and Executive orders.

*A. Impact on Small Entities*

The regulatory flexibility analysis provisions of the Regulatory Flexibility Act of 1980, 5 U.S.C. 601–612, do not apply to rules that are not subject to notice and comment. Because the Coast Guard has, for good cause, waived the notice and comment requirement that would otherwise apply to this rulemaking, the Regulatory Flexibility Act's flexibility analysis provisions do not apply here.

Under section 213(a) of the Small Business Regulatory Enforcement Fairness Act of 1996 (Pub. L. 104–121), if this rule will affect your small business, organization, or governmental jurisdiction and you have questions, contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

Small businesses may send comments to the Small Business and Agriculture Regulatory Enforcement Ombudsman and the Regional Small Business Regulatory Fairness Boards by calling 1–888–REG–FAIR (1–888–734–3247). The Coast Guard will not retaliate against small entities that question or complain about this rule or any policy or action of the Coast Guard.

*B. Collection of Information*

This rule will not call for a new collection of information under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501–3520).

*C. Federalism and Indian Tribal Governments*

We have analyzed this rule under Executive Order 13132, Federalism, and